WOLF, Judge.
Petitioners filed a petition for writ of common law certiorari to review the trial court’s order granting respondents’ motion to intervene and to file a counter-petition for adoption. The issue is whether the trial court deviated from the essential requirements of law in granting respondents’ motion to intervene in the adoption of the half sibling of their adopted child.
In June 1993, the respondents (Does) took custody of Mary[1] Doe, a newborn girl, through private adoption proceedings. The adoption became final in October 1993. On September 7, 1993, while Mary was already in her adoptive parents’ custody, Mary’s older half-sibling, Bonnie (born December 2, 1990), was permanently committed to the custody of petitioner, Department of Health and Rehabilitative Services (HRS). The natural mother of Mary and Bonnie had her parental rights over Bonnie terminated, and Bonnie was committed to HRS’s custody for subsequent adoption at that time.
On September 17, 1993, the Does filed a “Motion to Allow Contact with Prospective Adoptive Child” in which the Does asked the court to permit contact with Bonnie so they could “determine whether it would be in her best interests to be placed with her half-sibling in the [Does’] adoptive home.” On September 21, 1993, Bonnie’s foster parents filed a petition for adoption, asserting, among other things, that Bonnie had resided in their home since February 26,1993. Although the trial court denied the Does’ motion to allow contact with the adoptive child, the Does filed a motion to require HRS to comply with the requirements of section 39.45(2), on November 12, 1993. In that motion, the Does argued that section 39.45(2) requires HRS to make “every reasonable attempt” to place *698 Bonnie in the same home as her half-sibling, Mary.
On November 24, 1993, HRS executed a Recommendation and Consent for Adoption, indicating HRS’s intent to permit Bonnie’s foster parents, the Browns, to adopt her.
On January 3,1994, the trial court entered an order granting the Does’ November motion which sought to compel HRS to consider the Does as a prospective placement for Bonnie. HRS was ordered to “consider” the Does as a prospective placement for Bonnie; furthermore, HRS was warned that it should “be prepared to respond to the [Does] and the court to define the process taken in considering the [Does] as a prospective adoptive placement for Bonnie.” HRS sought review of that order through a writ of certio-rari in July 1994. This court granted HRS’s petition for writ of certiorari and quashed the trial court’s order, holding that (1) the section in chapter 39 stating a preference for keeping siblings who are in foster care together did not apply where the children were not both in foster care; and (2) the trial court had exceeded its jurisdiction. Department of Health and Rehabilitative Services v. Doe, 643 So.2d 1100 (Fla. 1st DCA 1994).
In February 1994, the Does moved the court for permission to intervene in the adoption of Bonnie. The Does made essentially the same argument for intervening in the adoption proceedings as they had in the previous request for HRS to “consider” them as a proper placement for Bonnie. The Does asserted that they were necessary and proper parties to the adoption proceedings, and requested to have their rights as prospective adoptive parents considered and determined by the court.
The trial court granted the Does’ motion to intervene in the adoption proceedings on January 6,1995. Both HRS and the Browns, Bonnie’s foster parents, have petitioned for common law certiorari to review the trial court’s order granting the motion to intervene.
Rule 1.230, Florida Rules of Civil Procedure, provides,
Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be subordinate to, and in recognition of, the propriety of the main proceeding unless otherwise ordered by the court in its discretion.
In Grimes v. Walton County, 591 So.2d 1091 (Fla. 1st DCA 1992), this court discussed the general test to determine whether a trial court has abused its discretion in allowing a party to intervene. The court stated that although rule 1.230 is to be liberally construed and the decision is generally within the “sound discretion” of the trial court, a showing of “indirect, inconsequential or contingent interest” would be inadequate to support a court’s decision to permit a party to intervene. Id. at 1094 (citing Morgareidge v. Howey, 75 Fla. 234, 78 So. 14 (1918), and Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240 (Fla.1970)).
The interest claimed by the Does in their motion to intervene is (1) that they are qualified pursuant to section 63.042, as they are husband and wife; (2) that they have passed a home study performed by HRS; and (3) that Bonnie’s half-sibling is their adopted child, Mary.[2]
Intervention in adoption proceedings has generally been allowed in three situations: (1) Where the intervenor is a natural parent even if the parental relationship has been legally terminated. See Rivera-Berrios v. Stefanos, 649 So.2d 881 (Fla. 5th DCA 1995), opinion on rehearing and certification, 20 Fla.L.Weekly D340 (Fla. 5th DCA Feb. 3, 1995); Green v. Department of Health and Rehabilitative Services, 412 So.2d 413 (Fla. 3d DCA 1982); and Thompson v. Department of Health and Rehabilitative Services, 353 So.2d 197 (Fla. 3d DCA 1977); (2) where the intervenors are grandparents who previously had legal visitation granted in a dissolution proceeding, In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991); In the Interest of M.L.M., 528 So.2d 54 (Fla. 1st DCA *699 1988); and (3) where the intervenors are foster parents who have cared for and developed a relationship with the child who is subject to the adoption proceedings, Alexander v. Alexander, 206 So.2d 452 (Fla. 2d DCA 1968). We feel it would be unwise to extend this right to intervenors who have no formal legal or personal relationship with the child prior to the adoption proceedings. See Berhow v. Crow, 423 So.2d 371 (Fla. 1st DCA 1982), where this court ruled that foster parents had standing to move to vacate a final judgment of adoption as to a child with whom the foster parents had established a familial relationship, but they did not have standing to challenge adoption as to the sister with whom they had not established such a relationship.
Respondents argue that section 63.022(1), Florida Statutes (1993), confers legal status upon them as intervenors. That section states the legislative intent of the Florida Adoption Act:
It is the intent of the Legislature to protect and promote the well-being of persons being adopted and their birth and adoptive parents and to provide to all children who can benefit by it a permanent family life, and, whenever possible, to maintain sibling groups.
We reject respondents’ interpretation of the section as conferring legal status on them for several reasons. Under the facts of this case, where the children have never lived together, there is no sibling relationship to maintain. The legislative statement contained in section 63.022(1) is a general statement of legislative intent to guide HRS and does not provide a basis for legal standing. We, therefore, grant the petition for certiora-ri and quash the order of the circuit court granting intervenor status to the Does.[3]
WEBSTER, J., concurs.
LAWRENCE, J., dissenting with written opinion.

. Fictitious names are used in order to ensure the privacy of the children.

. The critical allegation to be analyzed is number 3, as a multitude of parties may qualify under claims 1 and 2.

. This opinion should not be read to limit the ability of the trial court to inquire into any information concerning whether the proposed adoption is in the best interests of the minor child.